## Case No. 11,250.

### POLK v. ROBERTSON et al.

[1 Brunner, Col. Cas. 103;[1] 1 Overt. 456.]

Circuit Court, D. Tennessee. June, 1809.

PRACTICE — ADMISSION OF WRITTEN TESTIMONY — BOUNDARIES — ADMISSION OF PARTIES AS EVIDENCE.

1. Written testimony to which objection has been made should be handed to the court for inspection, without being read, for a determination of its admissibility.

2. The admissions of parties are competent evidence to the establishment of boundaries, but are not competent to determine the law applicable thereto.

Ejectment; plea not guilty, and issue.

The plaintiff produced the oldest grant for five thousand acres of land, dated about the

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

year 1786, lying on the head waters of Richland creek, beginning at John Nelson's southeast corner (of grant No. 1,120), thence north one thousand two hundred and fifty poles, east six hundred and forty poles, south and west to the beginning, in an oblong. John Nelson's grant was read, which calls to begin about three and a half miles nearly north from the mouth of Robertson's creek, lying on the head waters of Richland and Robertson's creeks. It was proved that these lands, with other adjoining tracts, had been diligently searched after previous to the opening of the office, in August, 1807, and could not be found, and therefore were not placed on the general plan contemplated by the sixth section of the act of 1806 (chapter 1). It was admitted that the defendants made their entry after the opening of the land office in that year, and obtained a grant before any corners or line of Polk's tract, or the others adjoining, could be found, which was in the year 1808.

In order to prove the southeast corner of Nelson's tract, copies of two other grants to Nelson of five thousand acres each, two to Martin Armstrong, and one to John Armstrong, all for five thousand acres each, were offered in evidence; this was objected to on the ground that grants which were not called for either directly or indirectly by Polk, the plaintiff, could not be read, being irrelevant. It was answered that a party had a right to read what records he thought proper as evidence, and the jury would judge whether the evidence had any bearing on the question or not.

TODD, Circuit Justice (M'NAIRY, District Judge, having an interest, did not sit). It is the duty of the court to see that the evidence is relevant, as much as it is, that it should be competent. When objections are made the court will exclude testimony upon either ground, when the incompetency or irrelevancy clearly appears. [Turner v. Fendall] 1 Cranch [5 U. S.] 118.

When objections are taken to written testimony it should be handed to the court for their inspection without reading, so that it may not have an effect upon the jury. [Levy v. Gadsby] 3 Cranch [7 U. S.] 186; [Burd v. Smith] 4 Dall. [4 U. S.] 88; 3 Bin. 329.

Upon examination of the copies offered, THE COURT said it was proper to receive the evidence, as there was such a connection in the calls of the grants as tended to show the boundaries of the plaintiff's tract; the dispute was a matter of identity only, and the evidence was proper. Copies of these grants were then read, from which appeared the following references in the grants: First. John Armstrong's claim called to include the mouth of Robertson creek, and to adjoin Martin Armstrong; this claim of Armstrong calls to adjoin another claim of his, and this last to adjoin Thomas Polk, the plaintiff. The second claim of John Nelson calls to begin at the southeast corner of his other tract. John

Nelson's third tract calls to begin at John Armstrong's southwest corner, all of which may be seen in the subjoined plat. Several searches had been made for these tracts without effect; at length among a number of persons in search of them, Mr. Coffee and G. W. Campbell, Esq., found one of the corners of John Armstrong's claim as they supposed, viz., at H. This corner was found by accident. Upon running north trees were found marked at G., having a small variation from the course and distance called for in the grant; continuing north a beech was found at A. on the side of a dry branch, as called for in the grant. This tree also varied from a north course more than the first; the grant calls at A. for a beech marked E. H. R. W., and an elm. The proof was there was an elm on the opposite side of the branch, but not marked for a corner at all. This beech was marked with the letters E. H. R. W., and also with W. C. There was no line marked east, west, or north from this place; there appeared an old line marked about twenty poles south of this place; none of the lines of Thomas Polk's tract were ever marked, nor corners made, except the supposed one at A.

Haywood, Dickinson & Campbell, for plaintiffs, submitted the evidence to the jury without argument, considering it too plain to admit of any.

Grundy, White & Overton, argued for defendant:—

First. Upon the principle that the oldest grant holds the land conclusively in a court of law, and that nothing but questions respecting boundary can occur, it was contended that the evidence offered by the plaintiff did not establish the beech and elm as the southeast corner of John Nelson's first tract, and consequently the southwest of the plaintiff's. The claim of the plaintiff is not otherwise established than by reference to Nelson's southeast corner. How is that ascertained? It is said by finding marks at H. G. and at this place. There is no other proof. No person is produced who made any of these marks, or saw them made. The survey of John Nelson's second tract, and John Armstrong's, were made on the 11th and 12th of March, 1786. Col. Weekly was one of the persons along at the time the corners were made. Why is he not produced? There are many reasons why the beech at A. is not the southeast corner of Nelson's first tract, called for by Polk. This place is called for in Nelson's grant, as being about three and a half miles nearly north from the mouth of Robertson's creek. Mr. Coffee tells us it is more than three quarters of a mile east of a north course from the mouth of that creek, and about four miles from thence. It cannot be the place; the distance does not answer, and there is a great variation in the course. If a latitude of three quarters of a mile be allowed to the

east or west, any other greater distance may with equal propriety. The tract of which this is a corner (John Nelson's) calls for the head waters of Richland and Robertson's creeks. This supposed corner at A. is on the waters of Rock creek of Duck, another water course altogether, and is not marked as a corner for the tract; a beech and elm is called for in the grant; the elm is not marked at all, and stands on the opposite side of the branch, where it is not reasonable to suppose a person would call for it for a corner. A tree called for as a corner was surely marked as one. Besides, the beech does not answer the description. Though marked as a corner for four tracts, it has more letters than are called for in the grant, viz., W. C. The proof produced, so far from showing that this is the southwest corner of Polk's tract, shows that it cannot be. There was not a single corner made at B. C. nor D. nor any line marked anywhere, so as to assist in establishing this place. We admit that if the place at A. was clearly established as the corner of the tract, that other corners or lines of the tract not having been marked, would not destroy the claim; but that is far from being established.

The English law differs from ours as it respects ejectments. There, a person may recover by showing a right of possession alone, jus intrandi, without any title deeds whatever. 2 Bac. Abr tit. "Ejectment," A, D, 3; 3 East. 355–358. Here you must cover the possession by title. 2 Hayw. (N. C.) 11, 69, 88, 98, 114, 157, 336. If it be necessary for the plaintiff to show a title, it must of course be such a one as conforms to the principles of law. It must contain a description sufficiently special to give notice where the land is situated, so that other persons who might have desired to appropriate vacant lands, could have an opportunity of knowing where it lay, and thus avoid being entrapped. Our law requires that grants and title papers should be registered. What can that be for, except to give others who may be concerned to know, notice where land lies; and who can be more concerned to know, or more affected, than a subsequent enterer. Before the defendants made their entry this land could not be found; it was not on the general plan, and it is manifest that the calls of the grant of Polk and Nelson, to which it refers, never could enable a person to find the corner now claimed.

In this view of the subject it is insisted that we are not bound to notice the calls of any claim, but Polk's and Nelson's, to which it refers. Nelson's does not call for any other claim; it is to begin about three and a half miles nearly north from the mouth of Robertson's creek. The corner A. is three quarters of a mile from that course; the marks there do not agree. It is said that John Armstrong's claim reduces everything to a certainty, and id certum est quod certum reddi potest. How does this claim do it? By calling to include the mouth of Robertson's creek? It does not state in what part of the five thousand acre tract it shall be included. Here, then, is a latitude of one thousand two hundred and fifty poles to go on, nearly four miles; the mouth of Robertson's creek might be anywhere within that limit, agreeably to the grant. In looking for the tract after finding the mouth of Robertson's creek you would know that you were then within the bounds of John Armstrong's five thousand acre tract of land, and you might know you were within two miles of some corner, or one mile of some line; but you could not tell where, nor how to find them; this will not fix the corners; going north you cannot find the corner A. by three quarters of a mile; if you did, it would not answer the description as to marks; but the most decisive point of all, that the grant would not give notice, is, that the corner when found is on the waters of Duck and not Elk, as called for in their grants; nineteen-twentieths of their land at least lying upon Rock creek of Duck. The plaintiff might with as much propriety claim lands on Red river, one hundred miles north of this place. How could any subsequent locator ever suppose, under all these circumstances, that the tree marked at A. was Polk's southwest corner, supposing him to have stumbled on it, for it must have been found by accident. The plaintiff's claim does not include a single acre of Robertson's creek, and but very little of Preston's creek of Elk. We are told the ridge dividing Duck and Elk is very flat and low at this place, and consequently the surveyor and locator of the land might suppose they were on the waters of Elk. We are also told that the line which is found marked in going south from A. shows that the surveyor was running south, and consequently he might have traveled up Rock creek. In traveling from Elk north, it might have been more difficult to tell when you passed the ridge, but not vice versa. In this country it will be recollected that a grant can be legally obtained without an entry under the laws of North Carolina upon removal warrants. There was no record kept of the survey, except in the secretary's office of North Carolina, and that has been determined insufficient to afford even constructive notice. (It was so determined with respect to lands in the military boundary where an office was always open; but this decision did not extend to lands lying within John Armstrong's bounds. Hickman's Lessee v. Ward, Nashville, Nov., 1804.) The plaintiff had no entry; his grant then afforded us the only means of knowing the situation of his claim, and that alone was to govern our conduct in entering. It should therefore surely contain as much certainty as an entry. But it was intended by law to contain more. Act 1777, c. 1, §§ 5, 10. Certainty is what the law requires (Plow. 84, 202), and for want of this certainty, the reasons for requiring which we have stated, the grant is void.

The second ground we take is, that agreeably to the practice of this state, the younger grant can be given in evidence to defeat an older one not obtained agreeably to law; on this last ground then, no doubt can exist respecting the application of our argument, and that the plaintiff cannot recover.

The plaintiff's counsel in reply stated that they understood the court as having already intimated an opinion, that the question here was a mere matter of boundary. As to the doctrine of notice, or the notoriety of the calls of the grant, it is entirely out of the question in this action. If we establish this survey as having been made for the plaintiff, it is sufficient. All that we have to do is to satisfy the jury that these are our boundaries. But admitting that you can go into equitable circumstances in a court of law, even on that ground, Polk's grant is good. We admit that a title must be shown in this country. Our title is more than twenty years old; when the land was surveyed it was troublesome times with the Indians: the country a wilderness, but little explored, and mistakes almost unavoidable; and if no mistakes in grants can be overlooked, there is not one in a thousand that will stand. See 2 Bay, 539; 2 Binn. 100; Hardin, 438; 2 Hayw. (N. C.) 349; 3 Call, 242; 1 Hen. & M. 477; 2 Bay, 515. Surveyors are public officers appointed by the public, not under the control of the claimants; and it would be highly unjust that their mistakes should prejudice persons whose lands they surveyed; and for this was cited 1 Hayw. (N. C.) 100, 347, etc. 3 Call, 419; [Bell's Lessee v. Levers] 4 Dall. [4 U. S.] 210; [Chancellor v. Phillips] Id. 213; Taylor v. Brown, 5 Cranch [9 U. S.] 234; 3 Binn. 30, 32. But we insist that if you were to search for the land the calls are sufficiently special. It is to be nearly north from the mouth of Robertson's creek; go then to the mouth of the creek, and after going three and a half miles north, look about, and at three quarters of a mile's distance to the east you find the beginning; this is nearly north, and the claims of Martin Armstrong and John Armstrong prove it to be the place intended. Robertson, one of the defendants, who was with the party who found the corner, said he believed it was the corner of Polk, and told the plaintiff he would admit it, provided he would caveat him.

Some dispute arose as to the amount of the testimony respecting Robertson's admissions or acknowledgments.

PER CURIAM. Evidence of admissions can be received in questions of boundary, as well as in other cases, but they should be clear and unequivocal to have any effect. It is always a suspicious kind of evidence, and the jury should be convinced that it was the intention of the party to admit a fact, being satisfied of its truth. In this case there does not appear to be a clear admission of the fact, but the jury will judge of this. Admissions of law, or what the law is, have no effect in a court of justice; they are never noticed. Admissions are evidence as to boundary. See 3 Johns. 223, 400; 2 Johns. 120; 2 Dall. 94; 4 Hen. & M. 194; 2 Hayw. (N. C.) 210, note; Hardin, 232; Camp. 367; 4 Johns. 143; 2 Gould, Esp. N. P. 34. But not evidence as to title. See 6 Johns. 19.

The whole question before the jury depends upon the identity of the survey, or boundaries of the plaintiff's land. If the jury believe from the testimony they have heard, that this is the place surveyed for the plaintiff, and granted to him, they will find for him, otherwise for the defendant.

Verdict for the plaintiff.